case number 24-10448 Good morning. Whenever you're ready to go, counsel. Glenn Ostrager for the appellant. With me is my partner, Joshua Breitman. This is an under section 16B of the Exchange Act, which subjects corporate insiders who engage in short swing trading to the disgorgement of profits. That furthers the congressional purpose under the statute of curbing insider trading. And I reference Reliance Electric v. Emerson Russell as director, chief executive officer, and a controlling stockholder of nominal defendant Luminar with approximately 80% of the voting power of the company's common stock. Russell is subject to section 16B resulting from his market sales of Luminar common stock matched with his indirect pecuniary interest in Luminar's subsequent common stock repurchases. That's the Luminar repurchases. And I refer to the order at D58, page 6. Counselor, as I try to wrap my mind around this case, I first want to confirm our circuit has not identified the elements of a 16B claim. Is that correct, that a lot of the district courts have been looking to the Second Circuit? That's correct, Your Honor. All right. And under those elements, is it fair to say, looking at the Second Circuit elements, that your client hasn't been that successful in these cases? Well, they're presently. Okay. So are there parts... So what is your position regarding the Second Circuit's test? Is that the test itself is inadequate for purposes of our consideration of adoption, or is it that the test itself is adequate and yet the Second Circuit just hasn't been applying it correctly? Well, we are at our position that the Second Circuit decision in FEDER v. Frost from 2000 addresses the regulatory framework, which is before this court, namely SEC Rule 16A-1A2, which was promulgated by the SEC pursuant to congressional delegation of authority to the SEC to define the terms in the statute. And that regulation was promulgated to clarify application of the statute to indirect interests. Can we look at... Before we get to the regulation, can we look at the text of the statute? Yes. Yes, Your Honor. Let's do that. All right. So let me ask some questions about it. Fair enough. I just wanted to make sure that we're on the same page. So the statute refers to any sale and purchase, specifically any profit realized by him being here the beneficial owner from any sale or purchase, right? And so that alone, as Judge Cronin pointed out, is written in the passive tense. But later on in the same sentence of the statute, it specifically says, irrespective of any intention on the part of such beneficial owner, meaning the same person, in entering into such transaction, meaning referencing the transaction, doesn't it have to be that the beneficial owner is the one entering into the transaction of holding the security? In other words, both the sale and the purchase? We have to look at the statute and the congressional delegation and the All right. So again, I want to confine myself to just the statute at the moment. We will get to the regulation, I promise you. Okay. But the regulation defines beneficial owner. Confined to the statute. That's the basis of my question. The statute covers any purchase or any sale. It does. But it also, in that same sentence, defines who is the one that is the transacting party, right? It doesn't define who's the transacting party. It does. I'll read it to you again. Irrespective of any intention on the part of such beneficial owner, so the same person we're talking about, in entering into such transaction, the transactions we're talking about, the sale or purchase of holding the security. Well, Mr. Russell did enter into the sale transaction. He did. Absolutely. And he... But not the purchase. He had an indirect pecuniary interest in... We'll get to that. But if it's requiring that the beneficial owner is the one that has the transaction, the sale or the purchase, then you would agree, without anything else, that would be insufficient for you, right? No. I think the statute talks about the issuer and the... Right. As a different entity. But counsel, that's a different entity. I understand that. All the statute does is define the relationship between the two parties. All right. Let's continue on the second part of the statute. The statute also requires or says that you're entitled to the profits realized from the purchase of the company. Now, as I understand what you're asking for, you want to disgorge any gains in the profits that he has from his shares that went up because of the repurchase. That's what you're seeking to disgorge, as I understand it, right? We're seeking to disgorge his proportionate interest in the repurchase. What he's holding, it went up in value because of the repurchase. Not because it went up in value. That's an aspect of it. We're talking about his indirect pecuniary interest... Right. Of his holdings. Based upon his 28 percent... Of his holdings. Holdings. Okay. But the problem is that those seem to me to be unrealized gains. In other words, if you're just seeking what he's holding, I don't... Listen, I hold stock. It may have gone up from when I purchased it, but I didn't realize anything until I sell. Okay. Right? SEC... Is what I just said right? It's not right in the context of indirect interest. It says profit realized. That has a definition. Realized is very, very definable. It's better at 220. I'm not talking about a case. I'm looking just at the statute. Okay, Your Honor. The profit realized under 16b, in the context of indirect interest, can look to intangible profits realized. That's the definition under the statute. Would anyone, any man or woman on the street say, if I bought Disney at 10 and it goes up to 15, but I'm still holding it, that I've realized a profit in Disney? I think that the Second Circuit, in Fetter and in Mercer v. Grupta, would say that profit realized with respect to indirect interest looks to intangible profits. Okay. All right. So a third part of the statute, and this is not for me. Judge Cronin pointed this out in his decision. Purchase is defined as obtaining some kind of interest. If you look at the definitions from the time of enactment, that's the clear meaning of what purchase is. But here, what was purchased is repurchased shares that are treasury shares that have no ownership. And here's what sort of general corporate law is. Shares that are reacquired have no value to the corporation for balance sheet purposes. How is that a purchase of an interest in any kind when it has no value? Okay. Again, the rule defines an indirect interest in terms of pecuniary interest. And you're matching the pecuniary interest with Russell's market sale. And that is— All right. You keep going to the rule. Focusing on a purchase is— You keep going to the rule. Let's go to the rule, okay? Now I want to talk about the rule. So here's what I understand. And correct me if I'm wrong on any of what I'm about to say. The rule from 1930, or the rules in general from 1930 until about 1991, explicitly exempted stock repurchases. Quote, the old rule said, quote, securities reacquired by or for the account of an issuer and held by it for its account shall be exempt from section 16A and 16B during the time that they are held by the issuer. In 1991, that rule is eliminated and 16A1 is reformulated. And the SEC says this. Since the issuer is not subject to Rule 16, our old rule, why we're eliminating it, is unnecessary. Isn't the SEC's position quite clearly that— No. No, Your Honor. Tell me why. Excuse me. For the account of the issuer, we're not talking about some other party's indirect interest in the issuer's repurchase. And that is the thrust of the reason for 16A-1A2, to define indirect interest so that— If the purchase here is the reacquiring of shares and that is exempt, then how can we possibly say that it's covered by the regulations? It's not exempt, Your Honor. It's not exempt vis-a-vis the indirect interest. The issuer is not liable. We're not seeking any remedy against the issuer. All right. Let's continue on with the regulations because that's what you want us to look at. The regulations as I understand it say that, and this is how it's been understood is, by operation of Rule 16A-10, where the SEC does not require reporting under 16A, there can be no liability under 16B. The SEC requires reporting of all indirect pecuniary interest. That— You agree with me that the SEC does not require reporting? No. They absolutely require— Let me finish my question. Let me finish my question. The SEC does not require repurchasing stocks that are repurchased by the issuer? The Form 4— Am I right? No, you're not, Your Honor. Form 4 in the definition specifically provides that the insider has to disclose all— That wasn't my question. That wasn't my question, Counsel. Does repurchasing stocks by an issuer require reporting under 16A? Not by the issuer. I— Please answer my question. Okay. Does it require reporting under 16A? The repurchase by the issuer, not. Right. But the indirect— That's what we're talking about there. We're talking about the indirect interest— I know, but if— That has to be reported. Then how can it be liable if the purchase itself is not a reporting requirement, and the rules say that you can only be liable under one if you have to report the other? Your Honor, with all due respect, the whole point of the regulatory scheme is to reach indirect interests, and those have to be reported. All right, let's go to another point of the regulation. Can I make a few points before my time? Let's go to another part of the regulation, because that's what we want to rely on. So Judge Cronin made this point. In 16A-1A2, it defines beneficial ownership as, A, as, quote, a direct or indirect pecuniary interest in the equity security. Here, the interest that you are attributing is not in the equity security, because we've already established that there is no interest at all in Treasury shares. What you are attributing it to is the ownership interest he has in his already holdings, not the reacquired holdings. How does that fall within the regulation? Your Honor, 16A-1A2i defines pecuniary interest as the opportunity, directly or indirectly, to profit or share. I know, but beneficial ownership, which is what you get the pecuniary interest, and beneficial ownership is the term used in the statute, is a direct or indirect pecuniary interest in the equity security. Can I finish my thought on this? But it has to be in the equity security. How is what you are seeking to disgorge an interest in the equity security? Can you answer my question, Counsel? Yes, I can. You have to look at the definition of indirect pecuniary interest in a transaction, the opportunity to realize a profit. And if you have that, then you have an interest which is subject to the statute. And that's the thrust of it.  Counsel, I've taken a lot of your time. I'm going to give you three minutes, uninterrupted, for you to present anything to me that you'd like to present. Thank you, Your Honor. I appreciate it. And I do have a few questions as well. And Judge Agudu has as much time as she wants for the questions that she has. Okay, thank you. Well, so first, I guess I want to ask, are you suggesting that in certain circumstances, and maybe this is one of them or maybe not, that the insider can also be the issuer when the insider is some kind of agent of the issuer? And I'm asking because it kind of sounds like maybe even if your claim doesn't fall neatly within the statute or the regulations, but there's a public policy concern here when insiders can still benefit on the back end, almost secretly, in these kinds of transactions. That's what I'm trying to understand. No, Your Honor. The rule is designed to effectively capture transactions where a controlling shareholder can cause an issuer to repurchase shares and then benefit in the transaction itself. And the second, the repurchase transaction. The repurchase becomes a matchable trade with a separate market transaction. Right, but again, Judge Lux's point, but that has no value at the time of the repurchase. Is that correct? No, Your Honor. It has no value at that time? You look at the 16A-1A1 looks at the opportunity in the transaction, not what happens after the transaction. So there is no doubt that under 16A-1A2I, you look at the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities. The statute itself talks about any purchase or any sale. And the purpose of beneficial ownership, as originally contemplated by the draftsman of the statute, was to broadly define beneficial ownership, but they left that definition to the SEC. The SEC defined it. And now with Loper-Bright, how much weight do we place on the SECs or the regulation or their interpretation, et cetera, as opposed to just looking at the statute as Judge Lux had started? Well, Judge Antoon did not question that the SEC had the authority to promulgate the regulation. There's no question about authority. It's about what weight do we place on it as you rely on it in terms of our interpretation and creation of elements to establish such a claim. And that's really what my concern is, is what should our rule be when it comes to 16B claims? The rule should be, as set forth in our brief, that if a controlling shareholder, like Mr. Russell, has the ability to control the investment by his controlled company, and then the company, at the behest of or with the authority of Mr. Russell, repurchases shares within the six-month window of the statute, then they've created, Mr. Russell has basically avoided, through his sales and his indirect pecuniary interest in the repurchase, he's avoided 16B. And the purpose of, under the 1991... So that's not legally improper, but because it perhaps undermines the purpose of the statute, it should be found unlawful? No, Your Honor. Because if the SEC is defining the term beneficial-illitional in terms of indirect pecuniary interest, what they're providing is that indirect pecuniary interest is matchable. And so going back to Judge Lux's comment about such beneficial owner, well, Russell is that beneficial owner defined in terms of his indirect pecuniary interest. So in this case, the insider, you're saying, is also the issuer? No, Your Honor. The issuer is a... I understand. But if you're saying that somehow he has violated the statute, doesn't it mean he has to be in both camps? It's not... When you look at indirect interest, you're determining liability under 16A-1A2 by looking at whether somebody has an indirect pecuniary interest and therefore beneficial ownership, and that beneficial ownership is matchable. He did not, per se, literally purchase the shares. He only has a beneficial ownership. And the statute speaks in terms of beneficial ownership. If he has a beneficial ownership, then in the repurchases, and he had the right to control the transactions and, in effect, trade through the company, that's subject to liability under the statute. And Judge Cronin's discussion of the whole doctrine of purchase and looking at the definitions in 1934 from dictionaries as to what they thought a purchase meant in 1934, that's not... There's a definition of purchase, which is very broad in the statute itself, in the Exchange Act. And so that's not what's at issue here. Thank you, Counsel. Can I make one other... No. So you've had more time than any other attorney this entire week so I think we've heard enough. But thank you.  Good morning, Your Honor. James Kramer on behalf of Appellee's Austin Russell and Luminar Technologies. First, I appreciate the time and effort the Court spent with the briefing on this. It's clear the Court understands the arguments, but I want to start with the following. This case presents a narrow issue of statutory construction of Rule 16b. And that situation we need to look at as this Court held in U.S. v. Stricker, you look at the body that's enforcing that executive branch order, here are the SEC, to see how do they interpret this. Now, I'm going to put aside Judge Luck's discussion of the statute because I agree completely. The words, issuer, are different than beneficial, owner, officer. But Judge Abudu's question is the right one and one that I've had, which is why has neither side invoked Loper Bright at any point in this litigation? I'm sorry, what was the question, Your Honor? Loper Bright. Why has neither side invoked Loper Bright in this litigation? And as a corollary, why has neither side invoked Kaiser, which has been out for years in discussing, for example, an amicus brief filed by the SEC and then try to then add interpretation to an existing regulation? Yeah, well, Your Honor, all I can say is I think the SEC has spoken directly on this at least four times. Your Honor referred to the 1991 guidance, but we've got guidance from 1935, the year after the statute was issued, which is where the SEC adopts Rule N, capital A4, and they say, quote, the following securities shall be exempt from the purposes of Section 16 A and B. Securities reacquired by or for account of the issuer built out in its account, 1935. In 1981, the SEC adopts, quote, interpreted release on rules applicable to insider reporting and trading. And they say in the summary that the commission has authorized this release to answer questions that have come up. And if you look at that release, it says issuer purchases are exempt from the application of Section 16 A and 16 B by virtue of Rule 16 A4. And it refers to footnote 59. And footnote 59 says, imposition of the short swing profit recovery provisions of 16 B would be incongruous in this context since the company would end up paying, would end up owing profit to itself. And then as your honor points out in 1991, the SEC again issued guidance where they changed the rule to say that we basically can change the rule because issuers are not subject to 16 B. So as a matter of statutory interpretation, we've got those situations. Plus, as the district court pointed out, in June of 2023, the court issued new guidance on insider repurchases. I'm sorry, on issuer repurchases. And it's a very lengthy discussion about... It's regarding 16 A on who has to report. That's exactly right, your honor. But there's a lot of discussion about how insiders are supposedly gaming the timing, right? And as the district court pointed out, in that scenario, you would have had a discussion of this, right? There would have been some discussion. And I'm going to use one of the authorities that my friend cited against us, just Professor Freed, Professor Jesse Freed is a law professor who studied this area intensely. In 2005, he did a University of California Law Review article, which was about buybacks. And he says in an unremarkable observation, quote, in contrast, 16 B does not apply to indirect purchases through stock buybacks. And then again, in 2014, he says, after going through a discussion about officers and directors and beneficial owners are subject to 16 B and giving a very specific example. And again, we cite these in our brief, which is document number 21 at page 47 to 49. He says, quote, however, 16 B does not apply to indirect purchases made by insiders through share repurchases or indirect sales made by insiders through equity issuances. There is an unbroken line of authority from the SEC, from the commentators who have looked at this, which says specifically, if an issuer buys or sells stock, that is not imputed to the insider for purposes of 16 B. And Your Honor, you pointed out a couple of things. Putting aside the words of the statute, this is a strict liabilities regime, specifically designed to capture involuntary transactions. And in that situation... Tell me, why would we put aside the words of the statute? You shouldn't. It's absolutely clear. And Your Honor, this is... Look, the SEC, I've given you several examples where they've expressly weighed in. There have been hundreds of thousands of moments where insiders have bought or sold securities, and within six months, a company has done a buyback or stock issuance. Hundreds of thousands, maybe millions. The SEC has never weighed in. In the Second Circuit appellate argument that happened several weeks ago, the SEC did not weigh in on this issue. We know the SEC follows this. They weighed in on FEDR. And of course, FEDR was a completely different situation where you had an alter ego of the insider buying. You had portfolio shares, not treasury shares. Can I stop you for a second? Yes, sir. One of the three, the Triorca cases from the Southern District of New York was argued on appeal, you said, a few weeks ago? Yes, it was. Which one? It was actually two of them, Your Honor. They combined them, and they were... And no decision has come out yet. Let's see, here they are. And I hope I get this correct. I believe it was Rothfie, the LAL family, and Rothfie-Drahe were both argued on appeal. And they combined the appeal. And so no decision has come out yet. But in that situation, counsel made the point that there have been hundreds of thousands of moments where the SEC could weigh in, right? And had never done it. It's because the commentators all agree 16b doesn't cover this. Now, Your Honor asked a question about, well, what about the policy? What if someone gains it, right? What if someone were to trade knowing that the company was about to do a repurchase or sale, right? I'm going to dump my stock before the issuer does a sale. The regulatory scheme contemplates that. We've got insider trading under Rule 10b-5, which makes it illegal to engage in a purchase or sale while in possession of material non-public information. You don't have to use it. If you know it, you can't trade. And that gives rise to both civil and criminal liability. You also have the anti-fraud provisions of the 1934 Act, Rule 10b-5, where the SEC and DOJ can require criminal action or any plaintiff, any shareholder can sue you for securities fraud. So the regulatory scheme contemplates all this. And because we're on a narrow question of statutory interpretation, Your Honor, I think it's absolutely clear. There's been no cases that have ever held that you match an issuer's repurchase or sales. And Judge Luck, you asked- Their concern is just brought under the wrong provision. They could have gone another route to attack my concern, which is about, and I appreciate your word, gaming the system. Yes, Your Honor. Look, if they thought someone gamed the system, they could bring a claim for gaming the system. And then we could see whether they legally can meet that. Under ICBAL, I don't think they can. And here's why. This case is about Mr. Russell's percentage ownership interest in the company. But the documents before the court make clear that the board of this company approved the repurchase. The board of Luminar Technologies made up of seven people, six of which are independent under the NASDAQ rules. And so therefore, we have a situation where there was no gaming, right? It was an independent board that approved this. But yes, Your Honor, if they want to try to bring a claim under 10b-5 or insider trading, they can try to plead that. But the complaint on appeal before us is whether or not 16b will allow the matching of a sale by Mr. Russell five months before the company decides to do a repurchase, whether it matches that. And the answer is plainly no, based on the statutory interpretation, the words of the statute itself, all the guidance from the SEC. And in addition, the fact that, as Judge Luck points out, these is treasury shares. There's been no profit realized. The words profit realized have to mean something. A couple of weeks ago, my daughter called me and said, Dad, my Roth has lost $300. I said, we haven't lost it unless you sell it, right? To your point, Judge Luck, this has not been a profit realized or lost. Another way to think about it is Mr. Russell sold some stock. He got some proceeds. That number hasn't changed because the company did a buyback and retired their shares as treasury shares. So, Your Honor, we just don't see... I don't think this is a close call, honestly. I know it's de novo, but everyone that's ever spoken on this, and specifically the SEC, has said this is not how the statute works. Professor Freed has said this is not how the statute works, which, of course, they cite extensively. So if Mr. Roth, who's filed four of these cases, wants to change the rule, here's a couple of choices. He can go to... He can try to do what he's doing here, which I don't think should work, or he can go to the SEC, or call his congressman. It's an executive branch issue, and try to change the rule. But the rule is drafted as the rule is drafted. If he wants to go ahead and bring a claim for someone gaming the system, those avenues are available to him. But 16B is not that avenue, and that's what we're here to talk about. The Second Circuit test elements breakdown of the statute clearly have been to your benefit so far. Any suggestions or advice to this Court when it comes to us creating a rule? Yes, Your Honor. I think the words in the statute have to be understood, as they're drafted. I think the Court should assume the people that prepared that statute were thoughtful, were careful, and drafted that statute in the context of the broader securities laws. In 1933, the 33 Act passed after the Great Depression, which, of course, covered offerings. The 34 Act passed the next year and covered open market situations. 16A and B are in the context of the broader regulatory scheme, which includes some of the insider trading things we talked about. Smart people were involved. The words mean what they mean. If the drafters wanted an issuer transaction to be matched to an insider transaction, could have said it. If the drafters wanted treasury shares to mean profit realized, they could have indicated it. And we know that not just because the words on their face are, you know, plain and obvious, but the three different things we cited, the 35 guidance, the 81 guidance, and the 91 guidance, specifically say, from the SEC, the issuer is exempt from 16B. But why do we need to rely on the guides? I mean, if you look at Luper Bright, if the rule or the statute is unambiguous and the text says what the text says, why do we need to look at that? You don't, Your Honor, but I'm just telling you it's to the extent because plaintiff is arguing, well, there's this intent, or well, there's some ambiguity. All I'm saying is the statute on its face is clear. And I just want to confirm that you believe that it's clear. Absolutely, Your Honor. There is, the words issuer, that word issuer is different than insider, director, or beneficial owner. Those are different words. Profit realized means something. The trade by the officer, director, beneficial owner, as Judge Luck pointed out at the beginning, they're tied together. So yes, I believe the statute is completely unambiguous and clear. Your Honor, I have to answer any questions, otherwise I have to yield my time back. Thank you very much, Counselor. Thank you, Your Honor. Counselor, you have three minutes. First, I would mention that we asked the district court to take our deference of the construction of the rule in FEDR. And we also asked the district court to look to the amicus brief in FEDR, which explains the SEC regulatory provisions. With respect to, I would start off by pointing out that what the rule did was codify existing law, including Whitaker v. Whitaker in the Ninth Circuit, Whiting v. Dow Chemical in the Second Circuit. Both cases talk about indirect interests of, in that case, family members. Then the SEC, when it promulgated the rule in 16A-1Aii, provides a non-exclusive list. Setting forth different types of indirect interests that should be within the scope of the statute, as giving rise to beneficial ownership and therefore matchable. The rule was principle-based and applies to all indirect interests, but I'd leave it to the courts to define whether those indirect interests implicate the purposes of the statute. FEDR, which dealt with one unique, with shares owned by the issuer, addressed an insider in that case, purchasing and then trading through a controlled company. And the court said they alleged matchable trades. And the rule that they promulgated by the SEC, which is consistent with 16A-1A, the non-exclusive list, is that you look to whether there's a substantial ownership, controlling influence, and whether the insider can cause or prevent the transaction. And that's an affirmative defense. Why does it, given that there are, again, clearly my concern is just making sure people don't game the system, that's in part how I interpreted your complaint in your case. Why don't the other provisions that opposing counsel highlighted fit better for your concern as opposed to trying to fit this scenario into this, I think, unambiguous statute? There's no 10b-5 claim. There's no fraud. There are either short-swing trades or not. Section 16B is the cornerstone of the statute. And it looks to deal precisely with this. And the SEC has set forth a test to see whether somebody's controlling insider is controlling a transaction. And the only other point I would make is that these transactions, these cases involving these indirect interests, they've developed, Dow v. Whiting caught their comment that it had been 40 years and nobody had brought up the spousal indirect interest. The issuers don't bring these cases. So it's left to the plaintiff's bar to bring the cases. But first, we only had the 1991 release and the new rule in 91. Then we had Fetter in 2000, Mercer v. Grupner in 2013. There aren't an avalanche of cases like this. Thank you, counsel. Thank you, Your Honor. All right, we're going to